**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**
        **Plaintiff,**

                    **v.**                                 **CASE NO.:  1:21-mj-00307**

**JEFFERY MCKELLOP**
            **Defendant.**

**DEFENDANT'S MEMORANDUM**
**IN SUPPORT OF PRE-TRIAL RELEASE**

The Defendant, Jeffrey McKellop, by and through counsel, respectfully requests that this

Honorable Court grant the Defendant's motion for review and revoke the magistrate judge's

order of detention, and release Mr. McKellop pending trial. A defendant who is denied pretrial

release by a magistrate judge is entitled to move for revocation of the magistrate judge's order.

18 U.S.C. 3145(b). The review of a magistrate judge's detention order is *de novo* as to issues of

law and fact. *See United States v. Chrestman*, No. 21-mj-218-ZMF (D.D.C. February 26, 2021)

(determining that the Bail Reform Act, Federal Magistrates Act, and Local Rules of the United

States District Court for the District of Columbia support the conclusion that review of a

magistrate judge's detention order is a *de novo* review by the district court).

Mr. McKellop is accused of crimes that qualify for the Government to request pretrial

detention under 18 U.S.C. §§3142(f)(1)(A) and §§3142(f)(1)(E). There is no presumption against

pretrial detention in this case under 18 U.S.C. §3142(e)(2). Therefore, it is the Government's

burden to show that there are no conditions listed under 18 U.S.C. §3142(c) that can reasonably

assure that the Defendant is not a flight risk, nor to guarantee that he is not a danger to the

community. The Government's burden of proof to detain based on risk of flight is preponderance

of the evidence. *United States v. Gonzalez*, 805 Fed. Appx. 8, 9 (D.C. Cir. 2020). The Government's burden of proof to detain based on a danger to the community is clear and convincing evidence. *United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019). The Defendant contends that he is neither a flight risk nor a danger to the community.

In making its determination, the Court is to consider the four factors laid out in 18 U.S.C. §3142(g). The Defendant respectfully requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## FACTUAL BACKGROUND

Mr. McKellop served a total of nearly twenty-two and a half years of active-duty service, and just under one year of inactive service in the United States' Army. Exhibit A – Defendant's Certificate of Release or Discharge from Active Duty. Mr. McKellop spent nine years of his service in the Special Forces. *Id.* at n. 11. Mr. McKellop honorably retired from the United States' Army on August 12, 2010. *Id.* at n. 23-24. During Mr. McKellop's twenty-two and a half years of active service, Mr. McKellop received numerous Decorations, Medals, Badges, Citations and Campaign Ribbons, including the 3 Bronze Stars and a Meritorious Service Award. *Id.* at n. 13, 18. Mr. McKellop served two deployments in Iraq (totaling one year), and two deployments in Afghanistan (totaling one year and ten months). *Id.* at n. 18.

Mr. McKellop traveled to Washington D.C. for the purpose of attending the rally on January 6, 2021 for then-President Donald J. Trump. Exhibit B – Sworn Affidavit from Scott Steiert. He was invited to join his friend Mr. Scott Steiert. *Id.* Mr. Steirt was concerned about violence from counter protesters, so Mr. McKellop brought his body armor to protect himself and his friends. *Id.*

In early February, several photographs of Mr. McKellop were posted on the Federal Bureau of Investigation's (FBI's) website with numbered identifiers, starting with 215, some with Mr. McKellop's face and others purporting to be him wearing a gas mask. *Statement of Facts* at 3-4. Within forty-eight (48) hours of posting of the pictures online, the FBI received two tips from individuals purporting to have knowledge of the identity of the individual 215. On February 7, 2021, Mr. McKellop contacted Counsel to begin the process of reaching out to the Government in relation to the incident in question. On February 9, 2021, Counsel attempted to contact the FBI and was unable to reach an agent or other representative. On February 11, 2021, Counsel was able to reach a Deputy of the United States' Attorney's Office involved in this matter for an initial discussion related to this matter. On February 12, 2021, Counsel, at the direction of Mr. McKellop, informed the Deputy of Mr. McKellop's name and the number identifier he was given on the FBI's website. Several emails were exchanged related to staffing the case. Ultimately, a phone conversation occurred between Government Counsel and Defense Counsel on February 17, 2021.

On March 14, 2021, Counsel was contacted by the Government to discuss setting up a self-surrender Mr. McKellop. On March 16, 2021, arrangements were made for the self-surrender with Mr. McKellop's full knowledge and cooperation. A self-surrender was arranged and occurred, without incident, on March 17, 2021 at the Washington Field Office for the FBI. Mr. McKellop was asked to bring the cell phone he had in his possession on January 6, 2021, which he did. Mr. McKellop has been in custody since his surrender.

On March 18, 2021 an initial appearance was held and a detention hearing scheduled for March 22, 2021. The hearing began as scheduled, but was delayed due to Mr. McKellop experiencing a severe asthma attack in the middle of the hearing. The hearing was concluded on

March 23, 2021. Magistrate Judge Faruqui ruled that Mr. McKellop was not a flight risk, but that there was sufficient evidence to support a finding of dangerousness to the community. This motion follows.

## ARGUMENT

The defendant requests that this Court grant him pretrial release, as there are conditions that can reasonably be placed upon him to ensure: a) the safety of the community and b) his appearance in this Court. The factors of 18 U.S.C. §3142(g) that the Court should consider when determining whether to release an individual pending trial are: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the defendant; 3) his history and characteristics, and 4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. §3142(g). The weight of all of these factors, and the Government's own actions in relation to Mr. McKellop, are in favor of release.

## Nature and Circumstances of the Offense Charged

The offenses charged against Mr. McKellop are crimes related to a riot that stemmed from a rally for the then-President of the United States on January 6, 2021. The pictures of the riot show hundreds, if not thousands of individuals, participating in the events outside of the Capitol Building on January 6, 2021. This Court has stated that there are several sub parts to this factor that the Court will consider: 1) the severity of the offense, 2) level of planning, 3) the carrying or use of a dangerous weapon, 4) participation/coordination with others, 5) leadership roles, and 6) egregiousness of conduct. *See United States v. Chrestman*, Case No. 21-mj-218-ZMF (D.D.C. February 26, 2021) ECF. No. 23, 14-16.

With respect to the severity of the offenses alleged, these are felony offenses that are also crimes of violence. However, they do not necessarily depict an intent to enter the Capitol

Building as the Government contended. In fact, they do not allege that Mr. McKellop even breached the Capitol Building. Further, the Government contends that the alleged attacks were targeted, however, based on the locations of the officers to each other, and the length of time that these alleged assaults took place, they appear to simply have been in one general area with no direction or plan. The alleged assaults took place over the course of approximately one and a half to two minutes.

As to the alleged level of planning, what tactical equipment Mr. McKellop was wearing was brought in case of violence caused by counter protesters. *See* Exhibit B at 1.  There is no evidence that Mr. McKellop intended on demonstrating at the Capitol Building on the day in question. Instead, the evidence indicates that Mr. McKellop attended the rally for then-President Donald Trump, and then, as with many, walked with the crowd to the Capitol Building.

With respect to carrying a dangerous weapon, Mr. McKellop did not come armed with any firearms, nor is there evidence of any knives or other bladed weapons. He did have a flag with him, however, the flagpole, that he can be seen carrying in the images does not appear to be tipped with any sharp object. *See* ECF No. 1, Att. 1, at 6, 9. Mr. McKellop is accused of using a flag as a bludgeon and projectile in one of the assaults, however, the flag that appears to be used in the images, was not the same flagpole that Mr. McKellop appears to have brought with him (which also raises questions as to whether this is the same individual).

As far as coordination with other rioters, there is no evidence that Mr. McKellop coordinated with anyone related to the riot. Mr. McKellop attended the rally for then-President Trump at the request of his friend. *See* Exhibit B at 1. There is no evidence that this friend nor Mr. McKellop intended on rioting when they attended the rally. There is no evidence that he

coordinated any of the alleged assaults with any other members of the crowd. Nor is there any evidence of any communications, let alone planning, with anyone after January 6, 2021.

Similarly, the individual alleged to be Mr. McKellop in the Government's photographs cannot be seen to have taken a leadership role. There is no evidence of any statements telling anyone to advance on the officers, or any symbols, gestures, or other actions that can be seen as giving orders, requesting assistance, or encouraging others to act.

Admittedly the egregiousness of the conduct that is alleged against Mr. McKellop is serious, however, the conduct in question is from targeted or premeditated, as the Government would contend. Based on the description in both the Statement of Facts and the Government's Memorandum in Support of Pre-trial detention,  the alleged assaults appear to be crimes of opportunity that occurred in the course of less than two (2) minutes. Even the "weapon" that was alleged to have been used was not one that was brought with Mr. McKellop, but instead the individual alleged to be Mr. McKellop appears to pick up the flagpole immediately prior to using it.

## Weight of the Evidence Against the Defendant

All of the evidence related to the identity of the individual who committed these alleged assault, is circumstantial. All video evidence of the assaults appears to have the perpetrator wearing a gas mask that obscures the perpetrator's face. There is a description of a video that allegedly shows Mr. McKellop putting a similar gas mask on, but there is no statement or video connecting Mr. McKellop directly from the time that he allegedly puts the gas mask on to the time of the initial assaults. With hundreds or even thousands of individuals participating in the riot, it would be incredibly difficult to show that no other participant wore similar clothing. The evidence of Mr. McKellop being the individual in question relates to a chest patch and gas mask.

There has been no evidence of the rarity of any of the objects that are being used to attempt to identify Mr. McKellop.

Additionally, though there is evidence that Mr. McKellop had at least one flag with him, *See* ECF No. 1, Att. 1, at 6, 9, this same flag is nowhere to be seen in the images of the assaults themselves, raising further doubts about the identity of the individual. *See* ECF No. 1, Att. 1, at 11-23.

## **Defendant's History and Characteristics**

Mr. McKellop's History and Characteristics weighs heavily in favor of release. Mr. McKellop's charactercan certainly be evidenced through his distinguished service of twenty-two and half years, three bronze stars, meritorious service award, and various other awards. Mr. McKellop also served two deployments in Iraq, and two deployments in Afghanistan. After his distinguished career in the military Mr. McKellop continued to work for the government as a contractor through companies such as GRS. Mr. McKellop remained employed until the photos were published by the FBI.

Mr. McKellop owns/has a mortgage on his home in Fishersville, Virginia where he has resided for over six (6) years. Mr. McKellop has no record of drug or alcohol abuse, nor any criminal history. Due to the lack of criminal history, he has no record concerning failing to appear in court. Nor was Mr. McKellop on any form of probation or release pending trial, sentencing, or appeal.

The best evidence of Mr. McKellop's likelihood of appearing in court, and strong evidence of his character, are the events that occurred after the FBI posted images of Mr. McKellop online. Mr. McKellop became aware of those images soon after their posting, and immediately began a search for counsel to engage in discussions with the FBI or United State's

Attorney's office. After Counsel made contact with the United States' Attorney's Office, Mr. McKellop directed Counsel to inform United States' Attorney's Office of his name and identifying number from the FBI's website. At that time Mr. McKellop had no way of knowing that the FBI had already received tips related to his identity. Mr. McKellop was made aware that the Government was likely to charge him soon thereafter. If Mr. McKellop had intended to flee, he would have done so. *See Chrestman*, ECF No. 23 at 28 (Weighing in the defendant's favor that he did not flee).

Further, once the Government did decide that it was ready to press charges against Mr. McKellop, more than a month after he had made contact with the United States' Attorney's Office, Mr. McKellop agreed to a self-surrender. *See Chrestman*, ECF No. 23 at 28 (Weighing against the defendant that he did not self-surrender even though he did not flee).

Further, Mr. McKellop brought the cell phone that he was using on January 6, 2021 at the request of the Government. *Chrestman*, ECF No. 23 at 28-29 (Noting negatively that the defendant appeared to have attempted to hide evidence that might have linked him to his actions on January 6, 2021). There is no evidence that Mr. McKellop attempted to conceal or destroy any evidence of any role that Mr. McKellop may have played in the events of January 6, 2021. To the contrary, the Government states that during a search executed on his home, the clothing that Mr. McKellop was alleged to have worn on the date in question was found.

It should further be noted that the conversation related to a self-surrender was started on March 14, 2021, and the surrender was scheduled for March 17, 2021. Yet again, after having been informed that the Government was now absolutely going to charge him in three (3) days, he still did not flee, and instead arranged to surrender himself to the FBI. No evidence could be stronger that Mr. McKellop intends to appear in court for all hearings and resolve this matter.

The strength of Mr. McKellop's character is shown through his extensive and distinguished military service, his cooperation with the FBI as relates to his arrest, his lack of criminal record, his lack of involvement in organization involved in the riot, and his willingness to surrender himself and potential evidence.

### Danger to the Community

Mr. McKellop is in no way a danger to the community, or any person, and this factor weighs heavily in favor of Mr. McKellop's release. Mr. McKellop's lack of a criminal history or any record of violent behavior prior to or subsequent to the incident on January 6, 2021 certainly weighs heavily in his favor. Further, unlike other individuals charged in this incident, Mr. McKellop was not a member of any group engaged in planning any form of attack. Mr. McKellop did not participate in any preplanning or coordination. Nor was Mr. McKellop a ringleader of any group, nor did he participate in any leadership role. The evidence shows that Mr. McKellop came to Washington D.C. to attend a rally for the then-President Trump, not to engage in any destructive or obstructive conduct. The conduct that Mr. McKellop is accused of occurred over the course of less than two minutes, following a lifetime of serving, protecting and fighting for this nation and its values.

Further, the Government clearly does not believe that Mr. McKellop is truly a danger to the community or others, as their own actions show. Mr. McKellop's identity was known to the Government as early as February 12, 2021, when it was communicated to them through Counsel on Mr. McKellop's request. Per the Statement of Facts, it appears that Mr. McKellop's identity was known even before that date. *See* ECF No. 1, Attachment 1 at 5.

The Government stated in the previous detention hearing that it took time for them to be able to put together all of the evidence against Mr. McKellop, however, it appears from the

Statement of Facts that there was body camera footage found of the acts of which Mr. McKellop is accused, and the Government had identified the individual's face of the person they believed to have committed the offenses prior to posting a "Be On The Look Out" or posting the related images under the identifier 215 to the FBI website. *Id.* at 2-5. Even if the pictures were only published online on February 7, 2021, when Mr. McKellop reached out to Counsel, the Government was aware of who he was within forty-eight (48) hours of that posting. That is two days before Mr. McKellop was able to make contact with the Government through counsel. Further, Mr. McKellop was not asked to self-surrender for more than a month after contacting the Government related to this incident.

If Mr. McKellop were such a danger, the Government certainly would have requested his self-surrender on an expedited timetable. The circumstances under which Mr. McKellop is accused of committing these crimes were unique. The combination of a presidential rally, culminating in a march towards the Capitol Building, during a period of civil, unrest does not come along every day, and certainly there are conditions that could be put in place to prevent Mr. McKellop from participating in any further rallies or civil unrest.

## **CONCLUSION**

The factor's above, including the Government's own actions, strongly favor pretrial release in this matter. The Government has failed in its burden to prove by a preponderance of the evidence that Mr. McKellop is a flight risk. Mr. McKellop made himself known to the Government soon after learning it was interested in information related to him. At no time did Mr. McKellop attempt to flee. Mr. McKellop self-surrendered at the request of Government and brought the phone that he had in his possession on January 6, 2021, as requested.

The Government has also failed in its burden to show by clear and convincing evidence that Mr. McKellop is a danger to the community. Mr. McKellop has no prior criminal record. The actions in question took place over two minutes. Mr. McKellop is a military veteran of more than two decades who earned several prestigious awards for service (three Bronze Stars and a Meritorious Service Award) and served deployments in both Iraq and Afghanistan. Mr. McKellop travelled to the then-President Donald J. Trump's rally in his body armor due to the fear of violence from counter protesters. Mr. McKellop was permitted to remain in the community for over a month by the Government after he was identified as 215. Mr. McKellop self-surrendered at the request of Government, bringing the phone that he had in his possession on January 6, 2021. Mr. McKellop did not participate in the planning of any attack, did not participate in a gang or group that was involved in the attack, nor did he exercise any form of leadership role. Mr. McKellop did not attempt to destroy or hide any evidence, instead surrendering the phone as requested by the Government.

**WHEREFORE**, the Defendant, by and through counsel, requests that this Honorable Court release Mr. McKellop and impose any conditions that it deems appropriate in this matter to assuage any doubts that Mr. McKellop is a flight risk or danger to the community.

RESPECTFULLY SUBMITTED,

JEFFREY MCKELLOP
*By Counsel*

/s/ Seth Q. Peritz

_____

Seth Quint Peritz, Esquire
Virginia State Bar Number 91240
Crowley Peritz Law
10560 Main Street, Unit 501
Fairfax, Virginia 22030
Office: (703) 337-3773
Fax:    (703) 935-0050
Email: Seth@CrowleyPeritzLaw.com
***Counsel for Defendant***
**Appearing *Pro Hac Vice***

EXHIBIT A

| CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES | THIS IS AN IMPORTANT RECORD. SAFEGUARD IT. | | ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID | |
|---|---|---|---|---|

**CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY**
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) MCKELLOP, JEFFREY ALLEN | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY/RA | 3. ▮▮▮▮▮ |
|---|---|---|

| 4a. GRADE, RATE OR RANK SFC | b. PAY GRADE E07 | 5. DATE OF BIRTH (YYYYMMDD) 19650617 | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) 00000000 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY OAKLAND, CALIFORNIA | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) 2402 WOOD DRIVE STEILACOOM WASHINGTON 98388 |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND 040003SFSF GRP B CO SP | b. STATION WHERE SEPARATED FORT BRAGG, NC 28310-5000 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED USAR CON GP (RET)  1 RESERVE WAY, ST LOUIS, MO 63132 | 10. SGLI COVERAGE  NONE AMOUNT: $ 400,000.00 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) 18E4P W8 SF COMMO SERGEANT - 9 YRS 3 MOS// 91B3O WHEELED VEHICLE MECHA - 8 YRS 2 MOS// NOTHING FOLLOWS | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 1993 | 06 | 14 |
| | b. SEPARATION DATE THIS PERIOD | 2010 | 10 | 31 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0017 | 04 | 17 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0005 | 00 | 25 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0000 | 11 | 16 |
| | f. FOREIGN SERVICE | 0002 | 07 | 19 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2004 | 03 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) IRAQ CAMPAIGN MEDAL W/THREE CAMPAIGN STARS //KENYAN PARACHUTIST BADGE//ROYAL NETHERLANDS ARMY PARACHUTE BADGE//BRONZE STAR MEDAL (3RD AWARD)//MERITORIOUS SERVICE MEDAL//ARMY COMMENDATION MEDAL (4TH AWARD) //ARMY ACHIEVEMENT MEDAL (3RD AWARD)//ARMY SUPERIOR UNIT AWD//ARMY//CONT IN BLOCK 18 | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) ADV NCO CRS (ANCOC), 3 WEEKS, 2006//ADVANCED PISTOL MARKSMANSHIP COURSE, 1 WEEK, 2009// /BASIC INSTRUCTOR TNG, 2 WEEKS, 2007//BASIC MILITARY LANGUAGE-FRENCH, 16 WEEKS, 2001// BASIC NCO CRS (BNCOC), 4 WEEKS, 2001// BRADLEY FIGHTING VEHICLE INFANTRYMAN COURSE, 2 WEEKS, 1993//BRADLEY//CONT IN BLOCK 18 |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | | YES | NO |
|---|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | | YES | X NO |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: NA          ) | | | YES | X NO |

| 16. DAYS ACCRUED LEAVE PAID 0 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO X |
|---|---|---|---|

18. REMARKS /////////////////////////////////////////////////////////////////////////
IMMEDIATE REENLISTMENTS THIS PERIOD -- 19930614-19960312, 19960313-19980318,
19980319-20020210//SUBJECT TO ACTIVE DUTY RECALL BY THE SECRETARY OF THE ARMY//EXTENSION
OF SERVICE WAS AT THE REQUEST AND FOR THE CONVENIENCE OF THE GOVERNMENT//SERVED IN A
DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN AFGHANISTAN 20020105-20020530//SERVICE IN
IRAQ 20030927-20040201//SERVICE IN AFGHANISTAN 20040610-20041210//SERVICE IN IRAQ
20050509-20060115//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13:
GOOD CONDUCT MEDAL (6TH AWARD)//NATIONAL DEFENSE SERVICE//SEE ATTACHED CONTINUATION SHEET
The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) 212 EDINBORO DRIVE SOUTHERN PINES NORTH CAROLINA 28387 | b. NEAREST RELATIVE (Name and address - include ZIP Code) SARA NANETTE MCKELLOP 212 EDINBORO DRIVE SOUTHERN PINES NORTH CAROLINA 28387 | |
|---|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) NC | OFFICE OF VETERANS AFFAIRS | X YES | NO |
|---|---|---|---|

| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | | X YES | NO |
|---|---|---|---|

| 21.a. MEMBER SIGNATURE SIGNED BY: MCKELLOP.JEF FREY.ALLEN.1165026132 | b. DATE (YYYYMMDD) 20100812 | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) SIGNED BY: EDWARDS.DONNELL.MONTRELL.1057677704 DONNELL EDWARDS, RET SVCS OFF | b. DATE (YYYYMMDD) 20100812 |
|---|---|---|---|

**SPECIAL ADDITIONAL INFORMATION** (For use by authorized agencies only)

| 23. TYPE OF SEPARATION RETIREMENT | 24. CHARACTER OF SERVICE (Include upgrades) HONORABLE | |
|---|---|---|
| 25. SEPARATION AUTHORITY AR 635-200, CHAP 12 | 26. SEPARATION CODE RBD | 27. REENTRY CODE 4R |
| 28. NARRATIVE REASON FOR SEPARATION SUFFICIENT SERVICE FOR RETIREMENT | | |
| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) NONE | 30. MEMBER REQUESTS COPY 4 (Initials) JAM | |

| DD FORM 214, AUG 2009 | PREVIOUS EDITION IS OBSOLETE. GENERATED BY TRANSPROC | MEMBER - 4 |
|---|---|---|

**9207310213**

AUT  NOT TO BE USED FOR  
DEN  TION PURPOSES

THIS IS AN IMPORTANT RECORD.  
SAFEGUARD IT.

ANY ALTERATIONS IN SHADE  
AREAS RENDER FORM VO

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | | 2. DEPARTMENT, COMPONENT AND BRANCH | | 3 |
|---|---|---|---|---|
| MCKELLOP, JEFFREY ALLEN | | ARMY/RA | | |

| 4.a GRADE, RATE OR RANK | 4.b PAY GRADE | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. |
|---|---|---|---|
| PFC | E3 | 650617 | Year 95  Month 04  Day 0 |

| 7.a PLACE OF ENTRY INTO ACTIVE DUTY | 7.b HOME OF RECORD AT TIME OF ENTRY (City and state, or complet address if known) |
|---|---|
| OAKLAND, CA | 4825 TIFFANY WAY  FAIR OAKS, CA 95628 |

| 8.a LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b STATION WHERE SEPARATED |
|---|---|
| HHC 199TH INF BDE FORSCOM FC | FT. LEWIS, WA 98433-5000 |

| 9. COMMAND TO WHICH TRANSFERRED USAR CONTROL GROUP (REINF), | 10. SGLI COVERAGE | None |
|---|---|---|
| ARPERCEN, 9700 PAGE BLVD., ST. LOUIS, MO 63132-5200 | Amount: $ 100,000.00 | |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| 11B1P INFANTRYMAN 3 YRS 10 MOS//NOTHING FOLLOWS | a. Date Entered AD This Period | 87 | 06 | 03 |
| | b. Separation Date This Period | 92 | 06 | 27 |
| | c. Net Active Service This Period | 05 | 00 | 25 |
| | d. Total Prior Active Service | 00 | 00 | 00 |
| | e. Total Prior Inactive Service | 00 | 00 | 00 |
| | f. Foreign Service | 01 | 00 | 00 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 91 | 10 | 15 |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)  
ARMY SERVICE RIBBON//ARMY LAPEL BUTTON//NATIONAL DEFENSE SERVICE MEDAL//AIR ASSAULT BADGE//  
PARACHUTE BADGE//ARMY GOOD CONDUCT MEDAL//OVER SEAS SERVICE RIBBON//SHARPSHOOTER BADGE  
RIFLE M-16//NOTHING FOLLOWS

14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed)  
BASIC AIRBORNE 3 WEEKS NOV 89//AIR ASSAULT 2 WEEKS SEP 88//NOTHING FOLLOWS

| 15.a MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 15.b HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | | | | | |

17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION    Yes    N

18. REMARKS    THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPUTER MATCHING WITHIN THE  
DEPARTMENT OF DEFENSE OR WITH ANY OTHER AFFECTED FEDERAL OR NON-FEDERAL AGENCY FOR  
VERIFICATION PURPOSES AND TO DETERMINE ELIGIBILITY FOR, AND/OR CONTINUED COMPLIANCE WITH THE  
REQUIREMENTS OF A FEDERAL BENEFIT PROGRAM//IMMEDIATE REENLISTMENTS THIS PERIOD: 870603-  
890627; 890628-920627//EXTENSION OF SERVICE WAS AT THE REQUEST AND FOR THE CONVENIENCE OF  
THE GOVERNMENT//SUBJECT TO ACTIVE DUTY RECALL AND/OR ANNUAL SCREENING//BLOCK 6 INCLUDES  
PERIOD OF DEP: 870403-870602//NOTHING FOLLOWS

JUL 3 1 1992

| 19.a MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b NEAREST RELATIVE (Name and address - include Zip Code) |
|---|---|
| 2701 RIGNEY RD APT D-14  STEILACOOM, WA 98388 | JOHN PAUL JONES P.O. BOX 86  FAIR OAKS, CA 95628 |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO    WA    DIA. OF VET. AFFAIRS  Yes  No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | SHELLY R PENTECOST  1LT  AG  Asst AG |

DD Form 214, NOV 88          Previous editions are obsolete.          MEMBER

EXHIBIT B

ON THIS /9 DAY OF MARCH, 2021, I SCOTT STEIERT, the witness herein, under

penalty of perjury, affirm that I am over eighteen (18) years of age, competent to testify to the

contents of this affidavit, and that the following facts are true and correct based on my personal

knowledge

As per request from Jeff McKellop's lawyer Seth, I am writing about the events leading

up to the Capitol Hill protest as it pertains to why Jeff Mckellop was there on the 6 of Jan.

I would like to start by saying I know with almost 100 percent certainty that Jeff did not lead

anyone or is a part of any group or is a leader of any group, or that he planned on doing what he

did on Jan 6.

I decided to go to DC to the Trump Rally a couple of weeks before the event. I wanted to

show my support for our President and decided to go even though I have never been to a Rally

before. I was very apprehensive about going only because I thought that there was a possibility

that anti-Trumpers might attack me because of my political views, or some radical group might

emplace an IED or do a mass shooting. It was for these reasons that I wanted Jeff to meet me

there, only because I felt more at ease having strength in numbers.

So, if I did not invite Jeff to come with me, I am almost certain that he would not have

been there.

Jeff only brought his body armor as a defense mechanism against any attack from

possible anti-Trumpers. You must understand Jeffs personality to know why he brought body

armor, gas masks, water, and medical kit. He is always prepared for the worst-case scenario, that

is what his SF training, and roughly 20 yrs. deploying overseas (about 8 of those years protecting

State Department and government officials ) has taught him.  In his mind he was going there to

Page **1** of **2**

**help** protect me, his friend and fight anti-Trumpers, so that's what he prepared for. He never **ever, not one single** time that I remember mentioned fighting police or our government. If he **would have thought that was the reason he was going there, I would** have not wanted him with **me.**

As to Jeff's personality. I have known Jeff for over 20yrs, and I am extremely shocked and disappointed at his actions. How Jeff acted during the protest is out of his character.

I am extremely sad, not only for Jeff, because I know he is regretful for his actions, but also for the LEO's that were injured while doing their job that day protecting the Capitol and its occupants.

19 Mar 2021
_____
Date

Scott Steiert

STATE OF WY
Albany_____ COUNTY

Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared **SCOTT STEIERT**, to me known, and who, after being first duly sworn, did depose and say that the matters and things alleged in the foregoing Affidavit are true and correct to the best of his information, knowledge and belief.

Given under my hand and official seal this the 19 day of March, 2021.

15 JUNE 2024
_____
My Commission Expires

_____
Notary Public



KEVIN COX
Notary Public
State of Wyoming
County of Albany
My Commission Expires
June 15, 2024

Page **2** of **2**